UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESSEX INSURANCE COMPANY,

        Plaintiff,

v.

RIZQALLAH INVESTMENTS, INC.,
d/b/a SOUTH SIDE JIMMY'S MAXUM
NIGHTCLUB, a Michigan corporation,
and CHRISTIAN DEBARGE,

        Defendants.
        _____/

File No. 1:04-CV-784

HON. ROBERT HOLMES BELL

## **O P I N I O N**

Plaintiff Essex Insurance Co. ("Essex"), a Virginia corporation, filed this action against Defendant Rizqallah Investments ("Rizqallah"), a Michigan corporation, and Defendant Christian DeBarge ("DeBarge"), an individual resident of Michigan, seeking a declaratory judgment that it has no duty to defend or indemnify Rizqallah, its insured, in an action filed by DeBarge against Rizqallah in the Kent County Circuit Court. This matter is currently before the Court on a motion for summary judgment filed by Essex.

**I.**

Essex issued a Commercial General Liability Insurance Policy, Policy No. 3CK0829 (the "Policy"), to Rizqallah, d/b/a South Side Jimmy's Maxum Nightclub, which was in effect from June 22, 2003, through June 22, 2004. On February 8, 2004, DeBarge, while a patron

at South Side Jimmy's, was forceably removed from the nightclub by its employees. DeBarge sued Rizqallah in Kent County Circuit Court for injuries sustained in his altercation with the employees of South Side Jimmy's. *DeBarge v. South Side Jimmy's Max. Nightclub d/b/a Maxum Night Club,* Case No. 04-09463. DeBarge alleges in his state court complaint that he was a business patron of the Maxum Nightclub, that an employee or agent of the nightclub asked him to leave, and that when he asked why, the agent assaulted him by unnecessarily grabbing him by the neck and throat. (Compl. ¶¶ 4-6). Several other employees or agents of the nightclub then "slammed" him to the ground, handcuffed him, "forcefully picked him up" by his arms, walked him out of the nightclub, and "forcefully threw him down" 5 or 6 stairs face first onto the pavement while DeBarge was still handcuffed, with the knowledge that DeBarge had no ability to protect himself or break his fall. (Compl. ¶¶ 7-13). DeBarge alleges that as a result of these actions he suffered physical injuries and was placed in fear. (Compl. ¶ 15). DeBarge further alleges that the employees gave false and misleading information to the police, as a result of which DeBarge was arrested and jailed. (Compl. ¶¶ 16-17). Based upon these facts DeBarge alleges three counts: 1) assault and battery, 2) negligence, and 3) malicious prosecution/false arrest and/or imprisonment.

Essex filed this action against Rizqallah and DeBarge seeking a declaratory judgment that it has no duty to defend or indemnify Rizqallah in the state court action. A default and default judgment were entered against Rizqallah. (Docket #'s 15 & 25). Essex then filed the

motion for summary judgment that is currently before this Court.  DeBarge has filed a brief in opposition to the motion.

## II.

The first issue for consideration by this Court is whether DeBarge has a right to litigate the issue of insurance coverage even though Rizqallah has been defaulted and a default judgment has issued stating that Essex has no duty to defend or indemnify Rizqallah in the state court action.

DeBarge contends that because he is the injured party he is an intended beneficiary of the insurance policy, and because Essex named him as a defendant in this declaratory judgment action, he has standing to seek a declaration of the existence of coverage under the Essex policy.

In *Allstate Ins. Co. v. Hayes*, 442 Mich. 56, 499 N.W.2d 743 (1993), the Michigan Supreme Court held that the injured party is a proper party to an insurer's action for declaratory judgment, and that once the injured party is named in the declaratory judgment action, his interest is sufficiently concrete to give him standing to raise the coverage issue. *Id.* at 67-70.  The Court further held that the entry of a default against the insured did not extinguish the interest of the injured party in the coverage question. *Id.* at 73.  This court followed *Hayes* in *Northland Ins. Co .v. Cailu Title Corp.*, 204 F.R.D. 327 (W.D. Mich. 2000) (Miles, S.J.), and allowed the injured party to argue in favor of coverage where the insured had been defaulted.

Essex contends that the continued viability of *Hayes* has been called into doubt by recent Michigan Supreme Court case law abolishing the "reasonable expectations" approach to insurance contract construction. *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 62, 664 N.W.2d 776 (2003). In *Schmalfeldt v. North Pointe Ins. Co.*, 469 Mich. 422, 428, 670 N.W.2d 651 (2003) (per curiam), the Michigan Supreme Court held that "a court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary" of the contract. *Id.* at 428. Applying this rule, the Court determined that a bar patron who was injured in a bar fight was "only an incidental beneficiary without a right to sue for contract benefits." 469 Mich. at 429.

Essex contends that nowhere in the Essex Policy is there any suggestion that injured night club patrons are the intended beneficiaries of its insurance contract with Rizqallah. Essex contends that in light of the recent Michigan Supreme Court cases, Michigan courts would no longer give an injured third-party who was not an intended third-party beneficiary of the insurance contract the right to sue for contract benefits.

Essex's contention that the continued viability of *Hayes* has been placed in doubt and that Michigan courts are not likely to follow it in the future is logical and may very well be correct. Nevertheless, federal courts sitting in diversity "must apply state law in accordance with the controlling decisions of the highest court of the state." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Neither *Wilkie* nor *Schmalfeldt* explicitly overruled *Hayes*. In fact, *Schmalfeldt*

4

discussed *Hayes* without giving any intimation that its continued viability might be in doubt. 469 Mich. at 425-26. It is only where the state's highest court has not addressed the issue, that this court may attempt to ascertain how that court would rule if it were faced with the issue. *Meridian*, 197 F.3d at 1181. Because it appears that *Hayes* is still the controlling decision of the state's highest court on the issue of an injured party's right to argue the coverage issue in a declaratory judgment action, and because Essex named DeBarge as a party to this declaratory judgment action, this Court will permit DeBarge to contest Essex's assertion that it has no obligation to defend or indemnify Rizqallah in the *DeBarge v. Rizqallah* action, notwithstanding the default entered against Rizqallah.

### III.

Essex seeks a declaration that it has no duty to defend or indemnify Rizqallah because the Policy does not cover intentional acts. The Policy provides coverage for bodily injury and property damage liability (Coverage A), and for personal and advertising injury liability (Coverage B). Coverage A applies to "bodily injury" only if the "bodily injury" is caused by an "occurrence." (Policy § I, Cov. A, ¶ 1(b)(1)). "Occurrence" is defined as an "accident." (Policy, § V, ¶ 13). The term "accident" is not defined in the policy. However, the Michigan Supreme Court has held that "an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Nabozny v. Burkhardt*, 401 Mich. 471, 477, 606 N.W.2d 639 (2000) (quoting *Frankenmuth Mutual Ins. Co. v. Masters*, 460 Mich. 105,

114, 595 N.W.2d 832 (1999)). Where there is no coverage under the Policy, there is no duty to defend. (Policy Endorsement M/E-001). The Policy also contains exclusions. Under Coverage A the Policy excludes coverage for "bodily injury" expected or intended from the standpoint of the Insured. (Policy § I, Cov. A, ¶ 2(a)).[1] The Policy also includes an endorsement addressing assault and/or battery[2] and an endorsement addressing restaurants/bars,[3] which exclude coverage for claims arising out of assault and/or battery, and

---

[1] The following sentence in Policy § I, Cov. A, ¶ 2(a) to the effect that "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" was deleted from the Policy pursuant to Policy Endorsements M/E-024 and M/E-189.

[2] The assault and/or battery exclusion provides:

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons, or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property.

(Policy Endorsement M/E-024).

[3] The restaurant/bar endorsement provides that coverage does not apply to any injury arising out of:

4. Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. . . .

6. Any charges or allegations of negligent hiring, employment, training, placement or supervision . . .

(Policy Endorsement M/E-189).

negligent hiring, employment, training, placement or supervision.

DeBarge contends that summary judgment is inappropriate because there are questions of law or fact regarding whether DeBarge's injuries were expected or intended from the standpoint of the insured, and thus excluded from coverage, or whether they resulted from the insured's negligence and were thus an "occurrence" or accident and included in coverage under the Policy.  DeBarge also contends that the Policy is ambiguous regarding at least the terms "occurrence" and "expected or intended injury," and that the Court should accordingly construe these terms in favor of the insured to require coverage or, at a minimum, require Essex to represent Rizqallah under a reservation of rights.

DeBarge cites *Polkow v. Citizens Ins. Co. of America*, 438 Mich. 174, 476 N.W.2d 382 (1991), in support of his contention that until it can be determined whether the insured's acts were negligent, the court should find a duty to defend.  In *Polkow* there was a question of fact as to whether groundwater contamination resulted from ongoing regular business activity or whether it resulted from a sudden and accidental discharge such that the sudden and accidental exception would apply.  *Id.* at 178-79.

The facts of this case do not involve the same causal uncertainty that was found in *Polkow*.  Although DeBarge contends that there is a question of fact as to whether he was thrown or allowed to fall down the stairs, his state court complaint clearly alleges an intentional act. He has alleged that the employees "forcefully threw him down 5-6 stairs onto pavement face first."  (Compl. ¶ 13).  Based upon the allegations in the complaint, it is clear

7

that DeBarge has alleged that the insured's employees acted intentionally in ejecting him from the nightclub. The real focus of DeBarge's argument is not the cause of his injuries, but whether the employees intended the scope of the injuries he sustained.

Evidence that the precise scope of injuries had not been anticipated does not convert an intentional act to an accident. The issue of when an intentional act causes unintended consequences was squarely addressed in *Nabozny*, *supra*. The Michigan Supreme Court held that an intentional act does not become an accident merely because the actor did not intend the specific harm, as long as the injuries are the natural, foreseeable, expected, and anticipated result of the insured's intentional acts. *Nabozny*, 461 Mich. at 480-82. In *Nabozny* the insured tripped the plaintiff. Although the insured did not intend to break the plaintiff's ankle, he "reasonably should have expected the consequences of his acts because of the direct risk of harm created." *Id.* at 481. The Court held that the injury stemmed from an intentional act, not an accident, and was accordingly not covered by the policy. *Id.*

In *Allstate Ins. Co. v. J.J.M.*, 254 Mich. App. 418, 657 N.W.2d 181 (2002), the insured provided alcohol to a minor who then committed an intentional act of rape. The court held that the insured's homeowner's policy did not provide coverage because the insured knew that giving minors enough alcohol to allow them to pass out would result in harm. "The fact that the specific harm that occurred was Stringer's intentional act of rape rather than alcohol poisoning is irrelevant to the determination whether the occurrence was an accident." *Id.* at 422-23.

In *Auto Club Group Ins. Co. v. Burchell*, 249 Mich. App. 468, 462 N.W.2d 406 (2001), the trial court held that "the actual injury–and not merely the act which caused the injury–must have been caused intentionally in order for the exclusion to be operative." *Id.* at 479. The Court of Appeals rejected this holding because under *Nabozny* "the pertinent determination that must be made is whether the consequences of the insured's intentional act either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions." *Id.* at 483 (internal quotations omitted). The court held that even though the insured suggested that any injuries he caused to third-parties in a barroom brawl were the result of self-defense, the evidence was sufficient to show that the insured "either intended to cause injuries or such injuries could have reasonably been expected," such that coverage was barred by the intentional acts exclusion of the insured's homeowners' insurance policy. *Id.* at 484.

Based upon the facts alleged in his state court complaint, it is evident that the injuries DeBarge sustained, even if not specifically intended by the insured's employees, were within the foreseeable risk of harm created by the employees' actions. Accordingly, DeBarge's state court complaint does not allege an accidental occurrence within the meaning of the Policy and is not covered by the Policy. In addition, DeBarge's claims are clearly excluded from coverage under the Policy exclusions for assault and battery and negligent hiring, training, placement or supervision.

DeBarge also contends that because he has pleaded claims in both intentional tort and negligence, there are questions of fact regarding application of the policy language. In Count II of his state court complaint DeBarge has alleged that the insured breached its duties to him by using excessive force against him, by failing to train, monitor and/or discipline its employees, and by allowing its employees to use handcuffs without proper training, authorization, or legal authority. (Compl. ¶¶ 22-23). Notwithstanding the inclusion of this negligence claim, it is undeniable that the basis for DeBarge's injuries is the alleged intentional conduct of the insured's employees in handcuffing and pushing him.

Michigan cases clearly hold that coverage for accidental injuries is not triggered when the claim is a mere recharacterization of intentional conduct in the guise of negligence.

> [A]n insurer's duty to defend and indemnify does not depend solely upon the terminology used in a plaintiff's pleadings. Rather, "it is necessary to focus on the basis for the injury and not the nomenclature of the underlying claim in order to determine whether coverage exists. . . . [S]o must the allegations be examined to determine the substance, as opposed to the mere form, of the complaint."

*Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 662-63, 443 N.W.2d 734 (1989) (citations omitted). *See also Burchell* 249 Mich. App. at 486 ("There is no duty to defend or provide coverage where the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct under the guise of 'negligent' activities."); *Aetna Cas. & Surety Co. v. Sprague*, 163 Mich. App. 650, 415 N.W.2d 230 (1987) (holding that although there was an allegation that the insured was negligent for failing to take his

10

medication, underlying claim sounded in intentional tort because true claim was that the insured intentionally killed the victim).

Notwithstanding DeBarge's attempt to raise issues of negligence, the basis for his injury and the substance of his state court complaint is an attempt to obtain compensation for what is clearly an intentional act. Accordingly, DeBarge has not alleged an occurrence that is covered under the Policy.

Finally, DeBarge contends that some of the policy provisions are ambiguous and/or illusory either as written or as applied to his state court complaint, and that these provisions should be construed to require coverage. Specifically, he contends that the terms "occurrence" and "expected or intended injury" are ambiguous and that ambiguities must be construed in favor of the insured to require coverage.

The insurer has a duty to defend if the underlying allegations even arguably come within the policy coverage, and if the policy is ambiguous, it will be construed in favor of the insured to require coverage. *Allstate Ins. Co. v. Fick*, 226 Mich. App. 197, 202, 572 N.W.2d 265 (1997) (citing *Polkow*, 438 Mich. at 180; *Royce v. Citizens Ins. Co.*, 219 Mich. App. 537, 542, 557 N.W.2d 144 (1996)). However, if the contract is unambiguous, the court must enforce it as written. *Id.* (citing *Royce*, 219 Mich. App. at 543).

DeBarge contends that it is ambiguous how the term "accidental" should be applied to a series of actions which may include both accidental and non-accidental injuries, and that it is ambiguous how the term "expected or intended injury" should be applied where some

11

of the injuries might not have been expected.  Contrary to DeBarge's contentions, the fact that an intentional act causes unintended consequences does not create an ambiguity because, as noted in *Nabozny*, the only issue is whether the injuries sustained were within the foreseeable risk of harm.  Here there is no question that DeBarge's injuries were within the foreseeable risk of harm.

DeBarge's state court complaint does not allege an "occurrence" within the scope of the Policy coverage, and is also specifically excluded from the Policy.  Accordingly, Essex is entitled to summary judgment and a declaration that it is not obligated to defend or indemnify Rizqallah in the state court action.

An order and declaratory judgment consistent with this opinion will be entered.


Date:     October 18, 2005              /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE